FILED
2017 Feb-23 AM 09:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **DEREK RAULERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:17-CV-128-VEH |
| | ) |
| **ELWOOD STAFFING SERVICES,** | ) |
| **INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**

On January 20, 2017, this civil action was initiated by the Plaintiff, Derek Raulerson, filing a "Verified Complaint for Declaratory Judgment and Injunctive Relief" in the Circuit Court of Etowah County, Alabama. (Doc. 1-1 at 2). Defendant, Elwood Staffing Services, Inc. ("Elwood"), removed the case to this Court on January 24, 2017, alleging that this Court has subject matter jurisdiction via 28 U.S.C. § 1332. (Doc. 1 at 1). The plaintiff has now filed a motion to remand. (Doc. 15). For the reasons stated herein, the motion will be **GRANTED**.

### I.     STANDARD

"[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).

"Where . . . the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Federal courts "'strictly construe[ ] the right to remove' and apply a general 'presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Scimone*, 720 F.3d at 882 (*quoting Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir.2001)).

## II. ANALYSIS

As noted, the Defendant removed this case alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). It is undisputed and clear that this case is between "citizens of different states." However, the Defendant has failed to meet its burden of proving that the amount in controversy exceeds $75,000.

In the instant case, the Complaint seeks only declaratory and/or injunctive relief. The Complaint alleges that "[p]rior to becoming formally employed with Elwood, Plaintiff was required to sign a 'Non-Compete, Non-Solicitation and

Confidentiality Agreement.'" (the Agreement). (Doc. 1-1 at 4). It continues:

> The Agreement provides, in pertinent part, that for one (1) year following the conclusion of the Plaintiff's employment with [the] Defendant, the Plaintiff may not engage in a business similar to that of Elwood . . . and in a capacity and/or role that is "substantially similar" to the capacity and/or role within which the Plaintiff performed services for [the] Defendant within seventy-five (75) miles of any branch of Elwood.

(Doc. 1-1 at 4). The Plaintiff seeks a declaration that the Agreement is "invalid and unenforceable." (Count One) (Doc. 1-1 at 8). He also seeks an order enjoining the Defendant from enforcing the Agreement. (Count Three). (Doc. 1-1 at 9).[1]

Because there is no claim for money damages, the Defendant must prove, by a preponderance of the evidence, that the value of the relief the Plaintiff seeks is in excess of $75,000. The

> value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir.2002). When the value of injunctive relief is "too speculative and immeasurable," it will not be included in the amount in controversy. *Id.* (internal quotation marks omitted) (holding that the injunctive relief in question—requiring insurers to compensate class members for diminished value on any future damaged vehicle claims—was too speculative). We are mindful that "[o]nly prophetic ken of a rare order could forecast what will ensue." *Vicksburg, S. & P. Ry. Co. v. Nattin*, 58 F.2d 979, 980 (5th Cir.1932).

---

[1] There is no "Count Two" in the Complaint.

*Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013).

Citing *Weiner v. Tootsie Roll Indus., Inc.*, 412 F. App'x 224 (11th Cir. 2011), the Defendant insists that "[t]he Eleventh Circuit has held that, for purposes of establishing the amount in controversy in a declaratory judgment action challenging a non-competition agreement, the amount in controversy is the value received by the plaintiff for entering into the agreement." (Doc. 16 at 2). Actually, the panel in *Weiner* was clear that "a covenant not to compete 'generally [is] not susceptible to an abstract fair market valuation.'" *Weiner,* 412 F. App'x at 227 (quoting *Better Beverages, Inc. v. United States*, 619 F.2d 424, 429 (5th Cir.1980)). Contrasting the situation before it with that in the *Better Beverages* case, the Court wrote:

> Tootsie Roll does not seek to "tether [ ] [value] to the fact of the transaction," [*Better Beverages*, 619 F.2d at 430]. In contrast to the situation in *Better Beverages*, where a taxpayer sought to assign a value to his covenant not to compete when there was no allocation made for the components of the business he sold, <u>Weiner and Tootsie Roll assigned millions of dollars of value to the goodwill of the companies transferred to Tootsie Roll</u>, and <u>Weiner acknowledged in paragraph 52 of his complaint that his agreement not to compete was a component of that goodwill</u>. Although Weiner alleged in his complaint that the "goodwill associated with [his] reputation is de minimis," <u>Weiner was compensated handsomely for the goodwill transferred to Tootsie Roll</u>, and even a small percentage of that total exceeds the jurisdictional threshold. In addition, Tootsie Roll presented undisputed evidence that Weiner collected millions of dollars in 2003 for his ownership interest in the companies and that, in 2003 and 2004, Weiner and several high-ranking salaried employees of Concord Confections and Alpharetta Confections earned more than the jurisdictional threshold. The district

> court did not clearly err when it found that Tootsie Roll established by a preponderance of the evidence that the value of the relief sought by Weiner exceeds the required amount in controversy.

*Weiner*, 412 F. App'x at 227–28 (emphasis added).

The Defendant argues that the amount it paid the Plaintiff, while he was employed at Elwood, some $94,658.27, is evidence that the amount in controversy is satisfied. However, unlike in *Weiner*, this transfer was not consideration for a one time transfer of goodwill. Instead, here the non-competition agreement was a <u>condition of employment</u>. (*See* doc. 16 at 1) ("Plaintiff's <u>employment</u> was expressly contingent upon his agreement to the restrictive covenants which he seeks to nullify in this case.") (emphasis added). The amount <u>paid</u> to the Plaintiff by Elwood is consideration <u>for the work the Plaintiff performed while employed there</u>. The "plaintiff's *prior salary* [is] irrelevant in determining the benefit which would flow to the plaintiff if the . . . agreement [is] invalidated as it was wholly speculative what future economic value the plaintiff would derive[.]" *Moorad v. Affordable Interior Sys., LLC*, No. 1:11-CV-2580-RWS, 2012 WL 162289, at *4 (N.D. Ga. Jan. 18, 2012) (discussing the holding of *Crump Insurance Services Inc. v. All Risks Ltd.*, 1:10–cv–1555, 2011 WL 176892 (N.D.Ga. January 18, 2011)) (emphasis in original). Instead, a better value to the Plaintiff of an order invalidating the Agreement would be his <u>current salary in the new position he now holds</u>, and which, according to the

5

Defendant, the Agreement prevents him from holding. The Defendant has offered no evidence of that figure.[2]

The Court also rejects the Defendant's argument that "there is additional value in this case based upon Plaintiff's knowledge of [D]efendant's proprietary staffing models and process – which were developed at a cost well in excess of $100,000." (Doc. 16 at 2-3). This argument addresses the potential value <u>to the Defendant</u> of enforcing the non-competition agreement. "The financial loss the defendant may suffer if the noncompetition clauses in the Agreement are declared invalid and the plaintiff is permitted to compete against the defendant is irrelevant. What does matter is the value of the benefit that will flow to the plaintiff if declaratory or injunctive relief is granted." *D & R Party, LLC v. Party Land, Inc.*, 406 F. Supp. 2d 1382, 1385 (N.D. Ga. 2005) (citing *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218 (11th Cir. 1997)).[3]

---

[2] Even if the amount which the Plaintiff made while working for Elwood were relevant to this inquiry, the Court holds that the figure that Elwood paid the Plaintiff <u>over a two-year period</u>, $94,658.27, would not be an accurate measure of the value of enjoining a non-competition agreement which, at most, had a <u>one-year time limit</u> from the date the Plaintiff was terminated–June 8, 2016.

[3] The Defendant cites *Davis v. Advanced Care Techs., Inc.*, No. CVS 06 02449 DFL DAD, 2007 WL 1302736, at *2 (E.D. Cal. May 2, 2007), where the California district court, citing precedent from the Ninth Circuit, held: " Where the object of the litigation is a noncompetition agreement designed to protect a company's confidential information, the value to the company of protecting that information is the amount in controversy." *Davis,* 2007 WL 1302736, at *2 (citing *Union Pacific R. Co. v. Mower*, 219 F.3d 1069, 1071 n. 1 (9th Cir.2000)). Only decisions of the Supreme Court or the Eleventh Circuit Court of Appeals are binding in this

## III. CONCLUSION

Because the Defendant has not shown by a preponderance of the evidence that the amount in controversy in this case is satisfied, the motion to remand will be **GRANTED**.

**DONE** this 23rd day of February, 2017.

                                                **VIRGINIA EMERSON HOPKINS**
                                                United States District Judge

---

Court. *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983), *prob. juris. noted in part, judgment aff'd in part*, 466 U.S. 924, 104 S. Ct. 1704, 80 L. Ed. 2d 178 (1984), *and aff'd*, 472 U.S. 38, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985) (The only courts a district court must be obedient to are the Circuit within which it is found and the Supreme Court of the United States.).